CLERK U.S. DISTRICT COURT

MAR 13 2019

CENTRAL DISTRICT OF CALIFORNIA
BY

1  N. Alai
2  14 Monarch Bay Plaza, Suite 383
   Dana Point, CA 92629
3  714-886-9707
   On Behalf of AMICUS CURIAE
4

5

6              **IN THE UNITED STATES DISTRICT COURT**
7            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
8                       **WESTERN DIVISION**

9  BRUNILDA STEPHENS, et al.          CV 17-05872 DSF (KSx)
10                                     JUDGE: Hon. Dale S. Fischer
          Plaintiff[s],               Courtroom: 7D
11
              v.
12
                                      **REPLY BRIEF**
13  NORDSTROM, INC. ET AL.            **IN FURTHER SUPPORT OF**
    Defendant[s].                     **"REQUEST FOR LEAVE OF COURT**
14                                     **TO FILE AMICUS CURIAE BRIEF**
15                                     **IN OPPOSITION TO PLAINTIFF**
                                       **COUNSEL ROLAND COLTON'S**
16                                     **APPLICATION AS LEAD CLASS**
17                                     **COUNSEL"; AND**
18                                          **(1) REQUEST TO STRIKE AND**
19                                     **SEAL COLTON'S OPPOSITION**
                                       **AND DECLARATION DATED JAN**
20                                     **28, 2019.**
21                                          **(2) REQUEST TO HOLD**
22                                     **COLTON IN CONTEMPT FOR**
                                       **VIOLATION OF COURT ORDERS**
23
24
                                       [Filed herewith DECL. SIAMAK
25                                     NABILI, M.D.]
26
                                      - 1 -
27  REPLY BRIEF IN FURTHER SUPPORT OF "REQUEST FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN
         OPPOSITION TO ROLAND C. COLTON'S APPLICATION FOR LEAD CLASS COUNSEL"
28

**TO THE HONORABLE COURT, PARTIES, AND ATTORNEYS OF RECORD:**

Non-party Nili Alai herein moving party or "amicus curiae" respectfully files the herewith Reply Brief in support of her "Request for Leave of Court to file the referenced amicus curiae brief <u>in Opposition</u> to Plaintiff counsel Roland C. Colton's application for lead class counsel" in Case No. CV 17-05872 DSF (KSx) (herein "*Nordstrom*").

Moving party further files this Reply brief and attached Lodgment of Exhibits in support of the request to do the following:

(1) Request to <u>Strike and Seal</u> Plaintiff Counsel Colton's Opposition and Colton Declaration dated Jan. 28, 2019 for violation of Court Orders and Attorney Client Privilege documents;

(2) Request to grant the Request to hold Colton in contempt for violation of the aforementioned;

(3) Request to grant leave to file the referenced amicus curiae brief; and

(4) Support the Court's earlier Order to Show Cause, and ruling denying Roland C. Colton's adequacy as class counsel.

## SUMMARY OF RELIEF SOUGHT

Amicus Curiae respectfully seeks an order of the Court *granting* leave to file the amicus brief, and to order Plaintiff counsel Roland Colton as inadequate as class counsel. In light of Plaintiff counsel Colton's since surreptitiously filed Opposition to the Request, further relief is requested in the form of

(1) An order of the court to seal and strike the 1/28/2019 pleading and declaration;

(2) An order granting the Request to hold Colton in contempt for violation of the aforementioned; and

(3) An award of costs, fees and sanctions in favor of moving party.

This application is filed herewith Declaration of *non-party* witness in Support: Decl. Siamak Nabili, M.D.

## STATEMENT OF FACTS

On Jan. 25, 2019 Amicus curiae, a non-party to the Nordstrom litigation filed a request for leave of court to file an amicus brief in support of the Court's prior Order denying class certification and lead class assignment to Plaintiff's counsel Roland Colton. The original Request brief was properly served on all parties, including current case Claimant The State of California, Franchise Tax Board (for Roland C. Colton tax debt; *see* https://www.ftb.ca.gov/aboutFTB/Delinquent-Taxpayers.shtml)

On Jan. 28, 2019 Plaintiff's counsel Roland Colton surreptitiously filed a pleading entitled "Plaintiff's Opposition to Amicus Curiae Brief" and an accompanying "Declaration of Roland Colton".

(1) Counsel Colton failed to serve moving party in any manner, hence moving party had no manner in which to timely know of the Colton's Opposition.

(2)  Counsel Colton's pleading was substantively flawed, and is subject to a strike and seal order for Colton's' violation of multiple statutes including

- Colton violated Bus. and Professions Code § 6068 (e)(1): Client Confidentiality;
- Colton violated State Bar Rules of Professional Conduct, Rule 3-100; and
- Colton violated public policy.

Plaintiff counsel Colton's Jan. 28, 2019 pleading and declaration did the following blatant and egregious acts:

(1) Colton released without authorization about ten (10) attorney client protected emails about non-party and former client Siamak Nabili, M.D. (Decl. Nabili ¶¶3-4) (See Decl. Colton 1/28/19 Exh C);

(2) Colton willfully violated other attorney client privilege of former client, and non-party Siamak Nabili, M.D. (See Decl. Nabili ¶¶3-4);

(3) Colton blatantly violated attorney client privilege of his former client Nili Alai, M.D. (See Decl. Colton 1/28/19 Exh C);

(4) Colton knowingly violated three court orders which specifically entered orders as to a court ordered anonymized case about his clients, which was ordered so as warranted by exceptional circumstances and ordered to remain anonymized.  (See Decl. Colton 1/28/1 ¶5 );

On or about January 31, 2019 Colton's legal malpractice lawyers made a written

REPLY BRIEF IN FURTHER SUPPORT OF "REQUEST FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN
OPPOSITION TO  ROLAND C. COLTON'S  APPLICATION FOR  LEAD  CLASS COUNSEL"

1   demand that moving party withdraw the amicus brief to this Court, or "else".

2   On February 5, 2019 Colton himself wrote the communication attached hereto as

3   Exhibit "C" and demanded that moving party withdraw the amicus brief or "else".

4   On February 6, 2019 Colton filed an *ex parte* application with Superior Court

5   demanding four reliefs, which were <u>all ultimately denied</u> at hearing on 02/07/2019. (

6   See Exhibit "B" . <u>On February 6, 2019 at 1:34 pm Colton and his legal malpractice</u>

7   <u>lawyers served a *wildly* broad application in Superior court seeking the court's</u>

8   <u>Orders for the following demands:</u>

9       (1) Colton demanded the court to order Plaintiff to withdraw an

10          amicus curiae brief filed in another venue (Central District Court

11          herein  2:17-cv-05872-DSF-KS *Brunilda Stephens v. Nordstrom,*

12          *Inc. et al,* (herein  "Nordstrom Court") ;

13      (2) Colton demanded to extinguish Plaintiff's litigation privilege and

14          all right to petition;

15      (3) Colton demanded an Order to Plaintiff to refrain from

16          broadcasting in court pleadings that Defendant is a convicted

17          federal criminal, which is regrettably completely true; and

18      (4) Colton demanded the court  issue a global "gag order" where the

19          party may not file in any court briefs about Colton,  or say

20          anything about Colton in any other court, agency, or process.

21

22   **PLAINTIFF   COUNSEL   COLTON'S   "OPPOSITION"   AND**

23   **EXHIBITS  TO   ARE   UNLAWFUL  AND  SHOULD  BE  STRICKEN  AND**

24   **SEALED  BECAUSE**

25

26

27

28

(1) Colton's  Jan 28, 2019 Opposition is in violation of multiple Court Orders which subjected him to maintain an anonymized case ordered as exceptional circumstance, as such, which Colton blatantly and willfully failed to do,  (See Decl. Colton 1/28/19 ¶5);

(2)  Colton's  Jan 28, 2019 Opposition begins on page 1 with irrelevant, defamatory, and slanderous misstatements which have no bearing on the Court's ruling  deeming  him inadequate as class counsel;

(3)  Colton's Opposition subjects him to just and well deserved discretionary strike and seal orders pursuant to statue for deliberate inclusion of "irrelevant, false, or improper matter inserted in any pleading";

(4) Colton's Opposition is in direct violation of unambiguous Court Orders dated about August 17, 2017 and September 14, 2014  in a anonymized case, the details of which and number which can not be referenced here pursuant to the court orders (In camera Exhibits of referenced Court Orders can be provided, which are also in direct possession of Counsel Colton);

(5) Colton's 1/28/2019 "Opposition", "Declaration", and Exhibit "C" to his "Declaration"  are a blatant and intended violation of attorney client privilege of non-parties, which have never been waived; (Decl. Nabili ¶¶ 3-6);

(6) Colton now also contends that the Court should simply dispense with this meritorious and *overdue* amicus brief  to deem him unfit, simply because Colton previously represented amicus curiae, and those involved various legal matters;

(7) Colton fails to recognize that his Opposition should really reference and discuss why he believed he is fit to be appointed as class counsel, as opposed to Colton's "wag the dog" litigation scheme whereby Colton's Opposition makes vacuous *ad hominem* attacks on amicus curiae, none of which have any bearing on (1) Colton's failure to disclose his criminal past and current tax delinquencies; (2) Colton's failure to truthfully list his qualifications for the court as to hundreds of million dollars of class action awards, whereas he simultaneously filed under oath (false) bankruptcy proceedings just a year or two after his purported winnings in his many class actions.(Plaintiff "Colton Response too Order to Show Cause re Adequacy of Counsel" 2/6/2018 4:25-28)

(8) Counsel Colton's 1/28/2019 arguably unlawful, and at best salacious, "Opposition" and "Declaration" are a further reference as to precisely why amicus curiae assert why Colton is likely unfit as lead class counsel.

Notwithstanding Plaintiff's Counsel Colton's intent to deflect the merits of the Request for leave to file the amicus Brief, Colton's conduct of violating attorney client confidences ( Decl. Nabili ¶¶9-10) meets the statutory qualification to deem him unfit as class counsel. Pursuant to Bus. and Professions Code § 6068(e)(1) et. seq, Colton's conduct qualifies as unlawful and in violation of public policy.

**PLAINTIFF'S COUNSEL COLTON IS A PURPORTED SEASONED LAWYER WHO CAN NOT CLAIM A LAY PERSON'S LACK OF SOPHISTICATION OR KNOWLEDGE.**

Colton is a self-described seasoned and knowledgeable legal person who cannot hide behind the traditional lay person ignorance. It is unlikely if not impossible that Colton is in any manner is unaware of the rules of pleadings, Bus. and Professions Code §6068 (e)(1), State Bar Rules, and requirements that he comply with statute.

Colton is not only an attorney who posses the skill and sophistication to know that neither the State Bar Rules of Professional Conduct, Code of Civil Procedure, nor Rules of Court should not be circumvented. Colton also should know it is improper and unethical to violate client confidences and the other morally improper conduct described herein.

Therefore, Colton's Jan. 28, 2019 vexatious "Opposition" and "Declaration" in support of his attempt to essentially circumvent class lead counsel adequacy criteria ordered by this court, are in bad faith and constitute his attempt to further circumvent these court Rules and Orders.

**PLAINTIFF COUNSEL COLTON'S IMPROPER PLEADINGS ARE ALSO AN IMPROPER USE OF THE COURT'S PROCESS FOR NEFARIOUS PURPOSES, AND HENCE JUSTIFY SANCTIONS AND A CONTEMPT ORDER.**

Moreover, Colton's referenced 01/28/2019 pleadings are in unequivocal violation of Bus. and Professions Code § 6068 (e)(1) as to at least one of his former clients, non-party, Dr. Nabili . (Decl. Nabili ¶ 9-10). Colton has made no attempt to balance his desire to *oppose* an amicus brief on just grounds, versus Colton's highly unprofessional and charged pleading which without regard, violated multiple client's

attorney work product, and privilege, not to mention blatantly and willfully violates distinct anonymized court orders.

Hence, to deter further bad acts by the twice State Bar disciplined counsel Colton, at minimum an order to show cause should issue as to Colton's violation of the referenced court orders.

## CONCLUSION

Amicus Curiae's Request for Leave to File Amicus Brief is filed in good faith, and intended to protect the proposed class, as well as jurisprudence in this matter.

Amici's further Requests for (1) an order to <u>seal and strike</u> Plaintiff Counsel Colton's Jan. 28, 2019 blatantly improper pleading and declaration, as well as (2) Request for sanctions, costs, and fees and (3) Request to hold Colton in Contempt  is based on good showing and just cause and should be *granted* in conformity with the laws of this Court.

DATE: February 10, 2019

Respectfully Submitted,

/S/ N. Alai
**N. Alai**

**DECLARATION OF NILI ALAI IN SUPPORT OF AMICUS BRIEF**

1. I am not a party to this action and I file the herewith brief and declaration in good faith, and not for any improper purpose.

2. I am a medical doctor, duly licensed to practice medicine in the State of California. I am competent to testify to the contents of this declaration, and make the same based on my own knowledge.

3. I am aware of these facts based on my knowledge, and through admissions made by Roland Colton to me. I have known Colton in a personal and professional capacity for more than 10 years.

4. I was represented by lawyer  Roland Colton as counsel of record, from about February 2015-June 2016 in Orange County Superior Court case No. 30-2012-00549174.

5. I never waived my Attorney client privilege with Mr. Colton.

6. I never waived court ordered anonymity in the referenced case of exceptional circumstances, nor have I ever authorized Mr. Colton to de-anonymize the same. In fact, on or about August 18, 2018 I specifically wrote Colton and his lawyers a detailed written correspondence with courtesy copies of the anonymized court orders, with an unambiguous demand to not violate the anonymized case, deemed of exceptional nature by the court. Hence it was extremely distressing to find out that Colton filed a blatant violation of those orders, and purposely de-anonymized a highly exceptional case in public federal court pleadings. Colton's conduct and bad faith act to de-anonymize a highly sensitive matter ordered by the court as of "exceptional circumstance", would thus be unjust and improper.

7. I have never authorized Mr. Colton to release "our" email communications, or any other attorney client privilege documents, or information.

8. Attached hereto as Exhibit "A" is are true and correct copy of the letter which Colton sent demanding that the amicus brief be withdrawn, and deprive the court of the vital information.

9. Attached hereto as Exhibit "B" is are true and correct copy of Colton's DENIED ex parte dated Feb. 7, 2019 on his demand to withdraw the amicus brief from this Federal Court, and to issue a gag order as to remarks about his crimes and federal convictions.

10. Attached hereto as Exhibit "C" is are true and correct copy of the ex parte application to force withdrawal of this amicus brief which Colton filed in Superior court (Denied on Feb 7, 2019).

11. Attached hereto as Exhibit "D" is are true and correct copy of the letter which I sent to Colton in August 2018 warning as to the anonymized court orders.

12. I have incurred costs, filing fees, and attorney fees in excess of $1680 for filing this Reply brief, seeking legal counsel, and filing fees.

13. It remains my unequivocal opinion that Roland Colton is unfit as class counsel as to his most recent alleged State Bar Rules violations as to attorney client privilege, criminal convictions, habitual dishonesty, financial crimes, and career long moral turpitude, and that he should not be so appointed.

I declare under penalty of perjury, pursuant to the laws of the State of California, that the foregoing is true and correct.

DATE: February 10, 2019                    /S/ N. Alai

                                           Nili Alai

                                           On Behalf of Amicus Curiae

REPLY BRIEF IN FURTHER SUPPORT OF "REQUEST FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN OPPOSITION TO ROLAND C. COLTON'S APPLICATION FOR LEAD CLASS COUNSEL"

## DECLARATION OF SAM NABILI

1. I am a medical doctor, duly licensed to practice medicine in the State of California. I am competent to testify to the contents of this declaration, and make the same based on my own knowledge.

2. I was represented by attorney Roland Colton as counsel of record, from about February 2015-June 2018 in Orange County Superior Court case No. 30-2012-00549174.

3. I am not a party to any action against Mr. Cotlon and I never waived my Attorney client privilege.

4. I have never authorized Mr. Cotlon to release "our" email communications, or any other attorney client privilege documents, or information.

5. Therefore, I was appalled to find out that Mr. Colton without my knowledge, prior authorization, or any consent, had released our emails and various confidential attorney client work product and communications in a completely unrelated matter entitled  2:17-cv-05872-DSF-KS *Brunilda Stephens v. Nordstrom, Inc. et al* in Central District of Federal Court.

6. On Jan. 28, 2019 Mr. Colton blatantly released approximately ten (10)  of my emails, or those emails which I caused to be sent, or was carbon copied in my legal representation by Colton.

7. Mr. Colton's Jan. 28, 2019 filing entitled *"Declaration of Roland C. Colton in Support of Plaintiff' Objections and Opposition to Nili Alai's Request to File an Amicus Curiae Brief"* was a violation of my attorney client privilege.

8. At no time before or after Colton's 1/28/19 filing his Declaration under oath in federal court, did Colton ever call, email, or notify in any manner that he had released my emails, or in any way purport that he inadvertently released the same, or let me know of his disclosures.

9. As a result of Mr. Colton's blatant violation of my attorney client privilege and unauthorized release of my confidential documents, legal advice was obtained.   Based on the aforementioned, it is thus my understanding that legal counsel has advised the following:
   - Colton violated Bus. and Professions Code § 6068 (e)(1): Client Confidentiality;
   - Colton violated State Bar Rules of Professional Conduct, Rule 3-100;  and.
   - Colton violated public policy.

10. I never authorized Mr. Colton's dissemination of our email communications. Thus, I respectfully request that Colton's referenced 1/28/2019 pleading should be stricken and sealed, and his unethical conduct before the court, sanctioned.

I declare under penalty of perjury, pursuant to the laws of the State of California, that the foregoing is true and correct.

DATE: February 10, 2019 executed at Orange County , California.

Siamak Nabili, M.D.

# EXHIBIT "A"

**Florence, David**

| | |
|---|---|
| **From:** | Roland COLTON <rcc7@msn.com> |
| **Sent:** | Tuesday, February 05, 2019 6:57 PM |
| **To:** | Bertsche, Corinne; Florence, David; N. Alai |
| **Cc:** | Siamak Nabili |
| **Subject:** | [EXT] Re: SECOND REQUEST:  2:17-cv-05872-DSF-KS Brunilda Stephens v. Nordstrom, Inc. et al |
| **Attachments:** | Letter re ALAI 2-5-19 (signed).pdf |

External Email

Nili,

Your attention is directed to the attached letter, which responds to your emails of Feb. 1st and Feb. 4th.

Roland C. Colton
**COLTON LAW GROUP**
28202 Cabot Road
3rd Floor
Laguna Niguel, CA. 92677
Phone: (949) 365-5660
Fax: (949) 365-5662

---

**From: N. Alai**
**Sent:** Monday, February 4, 2019 7:47 PM
**To:** Roland Colton; Corinne Bertsche; David Florence
**Cc:** Siamak Nabili
**Subject:** SECOND REQUEST: Time Sensitive EX PARTE Re: Colton Court Order Violations 2:17-cv-05872-DSF-KS Brunilda Stephens v. Nordstrom, Inc. et al
**SECOND REQUEST**

Feb 4, 2019

Dear Counsel,

Kindly advise of your response to the Feb 1, 2019 correspondence.
We would expect that this matter maybe resolved between parties
and not require the courts' intervention.

Given that (1) Defendant Colton's court order violation was a full 5 months AFTER
he and his counsel were in good faith put on written notice of the court orders with courtesy copies of the
same, and
(2) therefore Colton and his counsel all knew or should have known of the orders;

1

it appears that Colton's willful acts in de-anonymizing a court ordered anonymous case of exceptional circumstance
was be in extremely bad faith, carried out for nefarious purpose and intent, and in violation of Rules of Court and State Bar Rules.

It is Plaintiff's position that counsel are equally charged with a duty to uphold
these court orders once made aware of them. Hence, you have and had knowledge of your client's actions.
I apologize because there is no tactful manner to say this, but it is well established that Mr. Colton is a criminal with multiple
State Bar public actions, but his current counsel should not have to be bound by his unlawful acts,
nor have to go down such a egregious path.

However, should there not be a written agreement of parties by the close of business Tuesday 2/5/19
and swift and reasonable proposed correction by Defendant Colton and his counsel to seal and thus mitigate his unlawful conduct,
we intend to file ex parte for a seal order, as well as monetary sanctions against
Defendant *and* counsel pursuant to Rule 2.30, as well as the Federal court corollaries.

Again, you are put on SECOND notice that Dr. Nabili never waived any privilege and he remains the holder of that privilege as well. Mr. Colton's violation is highly improper and should be corrected.

If Defendant agrees to immediately move to seal the referenced pleading, we would be agreeable to not seek an ex parte application and sanctions for this violation.

In regards to an award of sanctions and attorney fees to Plaintiff, please be reminded of *Mix v. Tumanjan Develop. Corp.* (2002) 102 CA4th 1318, 1324 as to the same for pro se or limited scope litigants without an attorney of record.

Thank you in advance for your anticipated cooperation.

Sincerely,
Ally


On Friday, February 1, 2019, 6:44:16 PM PST, N. Alai wrote:


Dear Counsel and Mr. Colton,

We received notice of your filing -docket entry #56 ( 1/28/19) this afternoon. This is the earliest notice possible to parties.

We were alerted to Mr. Colton and Mr. Eskanderi's unlawful filing in the case in Federal Court
2:17-cv-05872-DSF-KS Brunilda Stephens v. Nordstrom, Inc. et al. whereby you willfully did the following:

1. Violated Court Orders as to an anonymized matter;
2. Violated attorney client confidentiality of Sam Nabili through dissemination of his emails without authorization or release;
3. Violated attorney client confidentiality of Nili Alai through dissemination of her emails without authorization;
4. Violated Business and Professions Code 6068 (e)(1);
5. Violated Former State Bar Rule 3-100(A);
6. Violated attorney requirement for candor to tribunal with false dates (Decl. Colton ¶11); and
7. Falsification of facts: Decl. Colton ¶ 24 "historical novel" whereas in truth was referenced correctly as "romance novel" .


**Please see the attached correspondence and Exhibits (Court orders) served to you on August 12, 2018.**
Therefore, when on 1/28/19 you violated the court orders, you knew or should have known of the orders.
Moreover, as you represented the anonymized parties in that action in 2015 and 2016, you also knew and

should have known of the anonymous nature of an exceptional nature as ruled by the court. We have **not** included co-counsel Eskanderi here as the 8/12/18 letter most importantly references the anonymized court orders, as well as attorney client privilege which parties have not and will not waive.

By nature of the referenced Orders, your mere publication and de-anonymization of the parties in the ordered exceptional matter is also a violation of the Orders. Moreover, Colton certainly could be argued has implicated his own attorneys and co-counsel as well, referenced *infra. We will also reiterate that neither Dr. Nabili nor Dr. Alai have ever released or waived privilege, and certainly not their emails. Dr. Nabili has no active litigation thus Mr. Cotlon clearly should know he has no right to violate Dr. Nabili's attorney client privilege, which Colton has certainly done. (Decl. Colton¶25 and Exh. C)*

**Mr. Colton, your habitual conduct is not only dirty, shameful and in bad faith, it is certainly unlawful-as you as a convicted felon well should know.**
As you and your attorneys were notified vis-a-vis the clearly outlined 6 page correspondence dated 8/12/18 , any de-anonymization of the referenced matter (and Order) is not only improper, but also sanctionable conduct for an attorney, and further actionable.

**Accordingly, we assume that you are agreeable to (1) urgently file a motion to seal your referenced pleadings, (2) mitigate the inadvertent further release of the same in 2:17-cv-05872-DSF-KS Brunilda Stephens v. Nordstrom, Inc. et al, or any other matters which you have done the same.**

As further relevant history, on January 30, 2019 Ms. Bertsche and Mr. Florence on behalf of Defendant Roland C. Colton wrote a demand to "withdraw" the Amicus Curiae brief filed in the Nordstrom matter. As a statement of facts, the Brief was simply an abbreviated factual account of Mr. Cotlon's criminal enterprises as documented through his grand jury indictments, federal felony conviction, and federal misdemeanor plea bargain cases, among others. These are simple truths, facts, and declarations made by Colton which the Court should know about. Contrary to Mr. Colton's recent pleading, these are not *ad hominem* attacks which apparently Colton has now despicably made. Hence, counsel's baseless demand to silence speech appears without any constitutional or statutory support. Hence, in absence of any such provided basis, the undersigned will *neither cease nor desist.*

Unless we receive written confirmation of your agreement *and* a conformed copy of such a motion to seal by the close of business on Monday Feb 4, 2019, it will be assumed that you refuse to correct the references unlawful conduct.

Accordingly we will be forced to (1) take proper remedial action, (2) prepare filings with each affected court, and (3) forward formal grievances with exhibits of Mr. Colton's filing and declaration in his "class action" as to all involved parties to administrative agencies.

Very Truly Yours,
Nili Alai

# ROLAND C. COLTON

February 5, 2019

*VIA EMAIL (nnalai@yahoo.com)*

Nili Alai
14 Monarch Bay Plaza
Suite 383
Dana Point, CA. 92629

      Case:    *Your Amicus Curiae Brief and Responsive Pleadings Thereto*

Dear Ms. Alai:

      This letter responds to your emails of February 1 and 4, 2019 regarding your claim of anonymity in connection with your Santa Clara lawsuit and your contention that Mr. Siamik's rights have been abridged by the response to your Amicus Curiae Brief, filed in the *Stephens v. Nordstrom* matter.

      I will remind you that it was your submittal of the libelous and defamatory Amicus Curiae Brief that triggered the need for my myself and my firm to defend itself and respond to your vicious and contemptible attacks. Your repeated characterization of me as a "criminal" who has "committed financial crimes and habitual frauds," who has engaged in "general moral turpitude and repeated acts of dishonesty," along with baseless and manufactured lies contained therein, constitutes *libel per se* under California law. (*See* 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §542, p. 795; *Boyich v. Howell* (1963) 221 Cal. App. 2nd 801; *Christian Research Institute v. Alnor* (2007) 148 Cal. App. 4th 71, 80.) Consequently, at the appropriate time, I will be seeking compensatory and punitive damages from you for not just the Amicus Curiae Brief but other defamatory and libelous statements you have published to third parties. [*See* CACI 1704 which permits an award of punitive damages for defamation *per se*.]

      Your defamatory actions are particularly egregious in light of your own previous recognition that I had "won high standing and praise of trial judges and legal adversaries..." and your own comments that I "was a highly competent attorney and experienced professional with nearly 40 years under your belt (who has been) astute in understanding the extreme defense tactics, the massive cover-up, and forced disconnects with our legal team through some expert and deft defense maneuvers for the same." You also noted with glowing praise and appreciation that I had "enthusiastically assumed representation of (your) nearly insurmountable case mid-game." (*See* your August 7, 2015.)

# EXHIBIT "B"

## Colton Court Order Violations 2:17-cv-05872-DSF-KS Brunilda Stephens v. Nordstrom, Inc. et al

From: N. Alai (nnalai@yahoo.com)

To:    rcc7@msn.com; corinne.bertsche@lewisbrisbois.com; david.florence@lewisbrisbois.com

Cc:    nnalai@yahoo.com; snabili@yahoo.com

Date:  Friday, February 1, 2019, 6:44 PM PST

Dear Counsel and Mr. Colton,

We received notice of your filing -docket entry #56  ( 1/28/19) this afternoon. This is the earliest notice possible to parties.

We were alerted to Mr. Colton and Mr. Eskanderi's unlawful filing in the case in Federal Court 2:17-cv-05872-DSF-KS Brunilda Stephens v. Nordstrom, Inc. et al. whereby you willfully did the following:

   1. Violated Court Orders as to an anonymized matter;
   2. Violated attorney client confidentiality of Sam Nabili through dissemination of his emails without authorization or release;
   3. Violated attorney client confidentiality of Nili Alai through dissemination of her emails without authorization;
   4. Violated Business and Professions Code 6068 (e)(1);
   5. Violated Former State Bar Rule 3-100(A);
   6. Violated attorney requirement for candor to tribunal  with false dates (Decl. Colton ¶11); and
   7. Falsification of facts: Decl. Colton ¶ 24 "historical novel" whereas in truth was referenced correctly  as "romance novel" .

**Please see the attached correspondence and Exhibits (Court orders) served to you on August 12, 2018.**
Therefore, when on 1/28/19 you violated the court orders, you knew or should have known of the orders. Moreover, as you represented the anonymized parties in that action in 2015 and 2016, you also knew and should have known of the anonymous nature of an exceptional nature as ruled by the court. We have **not** included co-counsel Eskanderi here as the 8/12/18 letter most importantly references the anonymized court orders, as well as attorney client privilege which parties have not and will not waive.

By nature of the referenced Orders, your mere publication and de-anonymization  of the parties in the ordered exceptional matter is also a violation of the Orders. Moreover, Colton certainly could be argued has implicated his own attorneys and co-counsel as well,  referenced *infra.We will also reiterate that neither Dr. Nabili nor Dr. Alai have ever released or waived privilege, and certainly not their emails. Dr. Nabili has no active litigation thus Mr. Cotlon clearly should know he has no right to violate Dr. Nabili's attorney client privilege, which Colton has certainly done. (Decl. Colton*¶*25 and  Exh. C)*

**Mr. Colton, your habitual conduct is not only dirty, shameful and in bad faith, it is certainly unlawful- as you as a convicted felon well should know.**

As you and your attorneys were notified vis-a-vis the clearly outlined 6 page correspondence dated 8/12/18 , any de-anonymization of the referenced matter (and Order) is not only improper,  but also sanctionable conduct for an attorney, and further actionable.

**Accordingly, we assume that you are agreeable to (1) urgently file a motion to seal your referenced pleadings, (2) mitigate the inadvertent further release of the same in 2:17-cv-05872-DSF-KS Brunilda Stephens v. Nordstrom, Inc. et al, or any other matters which you have done the same.**

As further relevant history, on January 30, 2019 Ms. Bertsche and Mr. Florence on behalf of Defendant Roland C. Colton wrote a demand to "withdraw" the Amicus Curiae brief filed in the Nordstrom matter. As a

statement of facts, the Brief was simply an <u>abbreviated</u> factual account of Mr. Cotlon's criminal enterprises as documented through his grand jury indictments, federal felony conviction, and federal misdemeanor plea bargain cases, among others. These are simple truths, facts, and declarations made by Colton which the Court should know about. Contrary to Mr. Colton's recent pleading, these are <u>not</u> *ad hominem* attacks which apparently Colton has now despicably made. Hence, counsel's baseless  demand to silence speech appears without any constitutional or statutory support. Hence, in absence of any such provided basis, the undersigned will **neither cease nor desist.**

Unless we receive written confirmation of your agreement *and* a conformed copy of such a motion to seal by the close of business on Monday Feb 4, 2019, it will be assumed that you refuse to correct the references unlawful conduct.

Accordingly we will be forced to (1) take proper remedial action, (2) prepare filings with each affected court, and (3) forward formal grievances with exhibits of Mr. Colton's filing and declaration in his "class action" as to all involved parties to administrative agencies.

Very Truly Yours,
Nili Alai

 18-8-12 LTTR to COLTON cousnel HIGHLIGHTED as to DOE case re SAC and court orders ROLAND VIOLATION.pdf
865.7kB

 19-1-28 ROLAND DECLARATION OPP violated court order 031129844998 HIGHLIGHTED.pdf
468kB

# EXHIBIT "C"

1   **LEWIS BRISBOIS BISGAARD & SMITH** LLP
    CORINNE C. BERTSCHE, SB# 174939
2     E-Mail: Corinne.Bertsche@lewisbrisbois.com
    DAVID M. FLORENCE, SB# 242857
3     E-Mail: David.Florence@lewisbrisbois.com
    701 B Street, Suite 1900
4   San Diego, California 92101
    Telephone: 619.233.1006
5   Facsimile: 619.233.8627

6   Attorneys for Defendant ROLAND C. COLTON
    dba COLTON LAW GROUP

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**02/06/2019** at 01:50:00 PM

Clerk of the Superior Court
By Alan Silva,Deputy Clerk

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

10

11   NILI ALAI,

12         Plaintiff,

13       vs.

14   ROLAND COLTON, An Individual practicing
    as COLTON LAW GROUP, a fictitious
15   business name, otherwise form unknown;
    JAMES EDWIN POLLOCK, an individual;
16   DANIEL HODES, an individual, also known
    as DANIEL M. HODES; JASON CARUSO,
17   an individual, also known as JASON
    MOBERLY CARUSO; JEFFREY MILMAN,
18   an individual, also known as JEFFREY A.
    MILMAN; KEVIN G. LIEBECK, an
19   individual; HODES, MILMAN & LIEBECK,
    LLP, a business corporation also known as
20   HODES MILMAN LLP; AND
    DOES 4-50 Inclusive,
21

22         Defendants.

CASE NO. 30-2017-00915715-CU-PN-CJC

**DEFENDANT ROLAND C. COLTON DBA
COLTON LAW GROUP'S** *EX PARTE*
**APPLICATION FOR A PROTECTIVE
ORDER, OR IN THE ALTERNATIVE, AN
ORDER SHORTENING TIME FOR A
MOTION FOR A PROTECTIVE ORDER;
MEMORANDUM OF POINTS AND
AUTHORITIES**

**Date:**  February 7, 2019
**Time:**  1:30 p.m.
**Judge:**  Hon. Ronald L. Bauer
**Dept.:**  CX103

Action Filed: 4/19/2017
Trial Date:    9/30/2019

23      TO ALL PARTIES AND THEIR ATTORNEY'S OF RECORD:

24      NOTICE IS HEREBY GIVEN that on **February 7, 2019** at **1:30 p.m.**, or as soon

25   thereafter as counsel may be heard, in Department CX103 of the Orange County Superior Court,

26   Civil Complex Center, located at 751 West Santa Ana Boulevard, Santa Ana, California 92701,

27   Defendant ROLAND C. COLTON dba COLTON LAW GROUP, erroneously named as Roland

28   Colton, An Individual practicing as Colton Law Group, a fictitious business name, otherwise form

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4810-8743-6423.1                            1

1   unknown ("Colton") will appear *ex parte* for an order in this case precluding Plaintiff Nili Alai

2   ("Plaintiff") from contacting Colton's clients, filing documents in his cases where she is not a

3   party and has no interest, contacting Colton or his wife regarding this legal malpractice action, and

4   requiring Plaintiff to withdraw her amicus brief filed in Colton's unrelated federal action.

5   Alternatively, Colton requests an order shortening time for a motion for a protective order.

6          This application is made pursuant to Code of Civil Procedure section 128 and California

7   Rules of Court, rules 3.1200, *et seq.* governing *ex parte* applications.

8          Good cause exists for the requested relief.  Plaintiff has interfered with Colton's practice

9   and representation of clients by searching for cases where he is counsel and inserting herself into

10   said action.  This includes filing an amicus brief in a federal court action pending in Central

11   District of California, falsely asserting that Colton is unfit and a criminal to request that he not be

12   appointed class counsel, despite that she is not a party and has no interest in that litigation.

13   Plaintiff has threatened to sue Colton's wife for allegedly "misrepresenting" that Colton was a

14   spectacular attorney, and has sent emails to both Colton and his wife in this case despite requests

15   to stop.  She has filed state bar complaints against not only Colton, but also defense counsel in the

16   underlying Shang litigation, as well as sanctions motions, and now threatens sanctions against

17   defense counsel in this litigation, attorneys Corinne Bertsche and David Florence.  Plaintiff's

18   actions and threatened actions are plainly improper, harassing and must cease immediately.

19   Intervention by this Court is necessary and time is of the essence.

20          This *ex parte* application is based upon this notice of application, the memorandum of

21   points and authorities in support, the declaration of David M. Florence in support, the entire court

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4810-8743-6423.1

2

DEFENDANT COLTON'S *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER

1    file in this matter, and upon such other and further oral and documentary evidence as may be

2    presented at or before the hearing on this ex parte application.

3

4    DATED: February 6, 2019                    LEWIS BRISBOIS BISGAARD & SMITH LLP

5

6                                               By: _David M. Florence_____

7                                                   Corinne C. Bertsche
                                                    David M. Florence
8                                                   Attorneys for Defendant ROLAND COLTON, dba
                                                    COLTON LAW GROUP
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND STATEMENT OF FACTS**

Colton respectfully requests an order in this case precluding Plaintiff from contacting Colton's clients, filing documents in his cases where she is not a party and has no interest, contacting Colton or his wife regarding this legal malpractice action, and requiring Plaintiff to withdraw her amicus brief filed in Colton's unrelated federal action where he has applied to act as lead class counsel.

**A.  The Underlying Medical Malpractice Action**

This action arises from defendants' representation of plaintiff, Nili Alai, M.D. ("Plaintiff") in pursuit of her medical malpractice action against her ophthalmologist, Dr. Barbara Ya-Hui Shang for personal injuries she claimed to have suffered as a result of contracting the Epidemic keratoconjunctivitis ("EKC") virus after being treated by Dr. Shang.  Plaintiff had multiple attorneys representing her at various times throughout the underlying action.  Colton was the last in a long line of attorneys, and represented Plaintiff through trial.[1]

Plaintiff repeatedly failed to cooperate and engaged in abuses to the discovery process throughout the underlying action, including violating several court orders prior to Colton's representation.  Specifically, Plaintiff was sanctioned by the trial court for repeatedly contacting Dr. Shang's patients and other willful discovery abuses in violation of court orders precluding her from doing so.  (Exhibits A to Florence Decl. – 3/25/16 Minute Order from underlying action.)  Her egregious conduct included fabricating an EKC Foundation and mailing packages to Dr. Shang's patients to obtain their medical information under false pretenses.  (*See* Exhibit A, B, and C to Florence Decl. – 3/25/16, 10/31/14, and 12/1/14 Minute Orders from underlying action.)  Plaintiff also engaged in other discovery abuses, including failing to provide key witness information necessary to dispute her claims.  Plaintiff's discovery abuses and violations led to the

---

[1] Plaintiff had been represented by five different attorneys during the underlying action, and also acted *in pro per* during various times.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4810-8743-6423.1

4

DEFENDANT COLTON'S *EX PARTE* APPLICATION FOR A PROTECTIVE ORDER

# EXHIBIT "D"

**N. Alai**
**14 Monarch Bay Plaza Suite 383**
**Dana Point, CA 92629**

August 12, 2018

Corinne C. Bertsche, Esq.
David M. Florence, Esq.
**Lewis Brisbois**
701 B Street, Suite 1900,
San Diego, CA 92101
T: 619.685.5507
F: 619.233.8627
Corinne.Bertsche@lewisbrisbois.com
David.Florence@lewisbrisbois.com
Janet.Smith@lewisbrisbois.com

(EXPEDITED FOR DELIVERY- NOT PROOFED)

James Edwin  Pollock, SBN # 44320
51 Dead Horse Loop,
Alton, UT 84710
Phone: (801) 520-5635
pollockje@gmail.com
PO Box 100771
Alton, UT 84710-0771

## VIA EMAIL & U.S. MAIL

Re:         *Nili Alai v. Roland Colton, et al.*
            Insured: Colton Law Group and Roland C. Colton
            Orange County Superior Court Case No.: 30-2017-00915715-CU-PN-CJC

Dear David, Corrine, and Counsel for Defendants Mr. Colton ("Colton Law Group")  and
Mr. Pollock,

        Thank you for your outreach last week  and it was a pleasure connecting with
David telephonically last Friday. To memorialize my conversation with David on August
10, 2018, kindly find the following communication.
        We reviewed briefly the parties' dispute regarding the causes of action listed in
the SAC. With respect to Defendant's position that the SAC is defective for lacking the
Colton fee agreement in full, the complete agreement is attached to the lodged exhibit to

Insured: Colton Law Group and Roland C. Colton
Orange County Superior Court Case No.: 30-2017-00915715-CU-PN-CJC
Plaintiff's Correspondence on SAC and Notice of Court Orders

Page | 1

the State Bar Act, in addition to breach of contract, and subject to civil remedies.

Retainer Colton: Engagement and Fee Agreement (page four) ¶ 7(d) states "the Firm shall refund the $75,000 fixed fee payment referred to in paragraph 1a, above, less any costs that have been expended by the Firm in connection with this engagement within ten (10) days of withdrawal.

Since Defendant has refused to return the unearned funds, Plaintiff again makes a demand for Defendant to immediately return to Plaintiff these funds. In sum, Defendant has not only willfully failed to perform pursuant to contract, but he has egregiously refused to return Plaintiff's funds.

**DEMAND TO DEFENDANT TO MITIGATE COLLECTED FEES IN OTHER ACTIONS**

Defendant Colton began representation of Plaintiff in a separate anonymized case in November 2015 without an advance fee agreement in violation of B&P Code §§ 6146 and 6148. Defendant then generated a surreptitious invoice for more than $2500 for his services which Plaintiff paid under check #24881. *A.I. Credit Corp., Inc. v. Aguilar & Sebastinelli* (2003) 113 Cal.App.4th 1072 (*Aguilar*), holding as a matter of law that *an attorney violating an ethical obligation is not entitled to fees* (*id.* at p. 1079) Plaintiff makes a demand on Defendant to return those funds.

**NOTICE OF THREE COURT ORDERS ON ANONYMIZED CASE FILED HERETO " IN-CAMERA" AND "UNDER-SEAL"**

Defendant specifically de-anonymized a case to named Plaintiffs, a case which pursuant to multiple Court orders is prohibited from such willful de-anonymization.

Defendants and their counsel are herewith put on notice of at least three court orders, as now relevant to Defendants' conduct in this litigation. These Court orders are <u>not</u> for public court filing within this action, and if need to be used, must be used judiciously as *under seal or in-camera*.

Counsel is in good faith cautioned that the mere publication of these orders within this action and hence deanonymization of either of the Plaintiffs in the referenced action, whether intentional or negligent, would likely result in prosecution by the ordering court and applicable administrative bodies pursuant to Bus. and Profess. Code § 6103.

**PLAINTIFF'S DEMAND FOR DEFENDANT TO MITIGATE WRONGFUL PRIOR DE-ANONYMIZATION DISCLOSURES IN *ALAI VS. SHANG***

For example, Defendant has knowingly violated an anonymized case which was court ordered as "exceptional circumstances" warranting the same. Defendant filed a MIL in April 2016 which willfully deanonymized a court ordered anonymous pleading. Defendant's willful and possible negligent violation of the referenced Court orders resulted in damages and adverse outcomes to Plaintiff. On other dates during his representation, Defendant further willfully de-anonymized a court ordered Doe case and listed the Doe party by full name in violation of multiple Court orders.

---

Insured: Colton Law Group and Roland C. Colton
Orange County Superior Court Case No.: 30-2017-00915715-CU-PN-CJC
Plaintiff's Correspondence on SAC and Notice of Court Orders

Defendant has at best, violated a fundamental principle in jurisprudence and the client-lawyer relationship, that, in the absence of the client's informed consent, a member must not reveal information *relating to the representation*. (See, e.g., *Commercial Standard Title Co. v. Superior Court* (1979) 92 Cal.App.3d 934, 945 [155 Cal.Rptr.393].) Here, Defendant has willfully violated the State Bar Act, and violated Public Policy. Should Defendant's conduct continue through this action, which would be highly unlikely, sanctions may be sought and would be warranted. (*Abandonato v. Coldren* (1995) 41 Cal. App. 4th 264)

## DEFENDANTS ARE STATUTORILY BARRED FROM DISCLOSURE OF CONFIDENTIAL ATTORNEY-CLIENT INFORMATION

Plaintiff, an attorney for Defendants cannot disclose any confidential information obtained in the representation of his clients without client's informed consent. (See Business and Professions Code section 6068(e)(1) and rule 3-100(A).) While in most situations, the identity of a client is not considered confidential and in such circumstances Attorney may disclose the fact of the representation to "Prospective Client without Witness Client's consent. Los Angeles County Bar Association Formal Opn. Nos. 456, 374.7/", *the case of an anonymized Doe filing and court orders ordering the same do not fall under this heading.*

Rule 3-100 "Confidential Information of a Client" cites " (A) A member shall not reveal information protected from disclosure by Business and Professions Code section 6068, subdivision (e)(1) without the informed consent of the client, or as provided in paragraph (B) of this rule.".

[1] *Duty of confidentiality.* Paragraph (A) relates to a member's obligations under Business and Professions Code section 6068, subdivision (e)(1), which provides it is a duty of a member: "To maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." A member's duty to preserve the confidentiality of client information involves public policies of paramount importance. (*In Re Jordan* (1974) 12 Cal.3d 575, 580 [116 Cal.Rptr. 371].) Preserving the confidentiality of client information contributes to the trust that is the hallmark of the client-lawyer relationship.

## FURTHER DE-ANONYMIZATION OF REFERENCED CASE BY DEFENDANT (OR HIS REPRESENTATIVES) WOULD VIOLATE COURT ORDERS

Defendants and their counsel, agents, or representatives know or should know of the Court orders governing the anonymized matter. Defendants are therefore again cautioned that the mere publication of these court orders within this action and hence deanonymization of either of the Plaintiffs in the referenced action, whether intentional or negligent, would likely result in prosecution pursuant to Bus. and Profess. Code § 6103.

## CLARIFICATION OF NON-REPRESENTATION BY DEFENDANT

Defendants Colton, Colton Law Group, and Mr. Pollock are no longer attorney for either of the Plaintiffs in the base action *Alai vs. Shang*. Defendants' former representation for Plaintiff on all cases has ceased. However, Plaintiff has not and does not intend to waive

---

Insured: Colton Law Group and Roland C. Colton
Orange County Superior Court Case No.: 30-2017-00915715-CU-PN-CJC
Plaintiff's Correspondence on SAC and Notice of Court Orders

privilege, work-product, or attorney-client privilege. Hence, Defendant is cautioned to tailor released documents within this action and to seal those documents, communications, or invoices which would violate privilege.

Pursuant to Rule 3-100, Defendant (an attorney) is subject to discipline for revealing confidential information which was strictly prohibited by Bus. And Profess. Code 6068 (e) (2). Plaintiff is the holder of the privilege and does not waive privilege with respect to Defendants. Defendant is therefore cautioned to make good faith attempts to preserve or balance client confidentiality and filing his pleadings in this action.. Rule 3-100 is not intended to augment, diminish, or preclude reliance upon, any other exceptions to the duty to preserve the confidentiality of client information recognized under California law. (Added by order of the Supreme Court, operative July 1, 2004.)

## PLAINTIFF'S UNDERLYING CASES ARE LIVE WITH TRIAL AND UPCOMING HEARINGS ON CALENDAR

Plaintiff has several matters that remain pending before the Courts, several of which involve representation by Defendants in this action. For example, one pending matter has a hearing on August 30, 2018 and a second action is pending trial on March 9, 2019.

Further dissemination and violation of client confidences by Defendants that are not narrowly tailored to this litigation would be likely prejudicial and possibly detrimental, and will force Plaintiff to seek through motions before this Court to justly restrain such willful or unintended conduct.

## CONCLUSION

Plaintiff is agreeable to meet and confer with Defendants on the causes of action in the SAC, and in good-faith remains open to further conferring on eliminating one or more COA as described herein. Plaintiff has made a demand on Defendants to remit the unearned fee retainer which Defendant has converted since April 20, 2016. Pursuant to Defendant's own contract, ¶7(d), Defendant was required to refund Plaintiff within 10 days of Defendant's withdrawal, which he failed and flat refused to do.

Notwithstanding ongoing meet and confer efforts, Plaintiff disputes the characterization by Defendant that the SAC has irrelevant or improper allegations, or paragraphs and images. First, the truth is an absolute defense to such misguided claims by Defendant. Moreover, each and every paragraph in the SAC is fully substantiated, factually based, and highly relevant to this action as explained herein. Hence, in absence of an agreement of parties to resolve one or more of the COA, Plaintiff is unable to remove the otherwise relevant paragraphs in the SAC.

Please feel free to contact me for any comments or questions. Kindly advise if you will be accepting service on behalf of Mr. Colton's purported group associate, Mr. Pollock.

Thank you for your anticipated cooperation with the referenced Court orders.

Very truly Yours,


N. Alai

---

Insured: Colton Law Group and Roland C. Colton
Orange County Superior Court Case No.: 30-2017-00915715-CU-PN-CJC
Plaintiff's Correspondence on SAC and Notice of Court Orders

# DOCUMENTS DESIGNATED CONFIDENTIAL AND

# UNDER SEAL

# PURSUANT TO COURT ORDER

# NO FURTHER ORDER REQUIRED

**REFERENCED COURT ORDERS AS TO AN ANONMYZED MATTER OF EXCEPTIONAL CIRCUMSTANCE , AND COURT ORDERED AS SO WILL BE MADE AVAILABLE TO THE COURT IN CAMERA AT ORAL HEARING. THEIR MERE PUBLICATION WOULD THUS VIOLATED THE REFERENCED ANONYMIZED ORDERS.**

# EXHIBIT  "E "
# DECLARATION OF
# ROLAND C. COLTON
# IN HIS  CRIMINAL
# TRIAL

# AFFIDAVIT OF ROLAND C. COLTON

I, Roland C. Colton, declare as follows:

1.      I am the defendant named in the within indictment.  I have personal knowledge of the facts set forth in this declaration and, if called and sworn as a witness, I would be competent to testify to such facts.

2.      I have been an attorney licensed to practice law in the State of California since June 28, 1978.  I operated as a sole practitioner for many years before forming the law partnership of Colton & Roesser in 1991.  My practice was based in San Diego County until 2005, when I moved my offices to Orange County.  I married my present wife, Dr. Nahid Birjandi ("Dr. Birjandi"), on June 18, 1999, and have resided with her since that time in her Laguna Niguel residence.

3.      On October 11, 2001, I filed Chapter 7 bankruptcy in the Southern District of California.  The Trustee appointed to the case was Richard Kipperman ("Trustee"), represented by the law firm of Pyle, Sims, Duncan & Stevenson.

4.      On December 11, 2001, the Trustee's counsel sent me a letter demanding that the law firm of Colton & Roesser be dissolved, that all assets of the partnership be sold, and that any surplus be paid over to the Trustee.  In December, 2001, the Trustee's counsel also sent me a letter seeking to terminate the lease where the law firm was conducting business in Del Mar, California.

5.      The first session of my Rule 2004 bankruptcy examination took place one month later, on January 15, 2002.  During this examination, I answered questions about my finances, my wife's finances, and financial payments that I had made to my wife to assist her in making mortgage payments on her residence.  During the deposition, the Trustee's attorney, Peter Duncan, indicated to me and my counsel, "off the record", that the Trustee might take legal action against my wife, in view of testimony that I had provided her financial assistance.  I then advised Mr. Duncan that I had not notified my wife of my bankruptcy, and requested that I be given notice before any legal action was

1

1    taken against my wife so that I could discuss it with her first to minimize the shock and

2    embarrassment to her and her family and the potential disruption to my marriage that was

3    likely to result; Mr. Duncan gave his word to me and my attorney that he would do so.

4          6.     Shortly thereafter, on January 30, 2002, *without any advance notice*, the

5    Trustee filed a lawsuit against my wife, Dr. Birjandi, seeking to force the sale of her

6    residence and pay over the proceeds to the Trustee. A *lis pendens* was also recorded

7    simultaneously against my wife's Orange County residence. The lawsuit also sought to

8    force the turnover of Dr. Birjandi's podiatric practice, a practice to which, as I had

9    testified, I had never given any financial support. The lawsuit and *lis pendens* were

10   served on my wife's parents (temporary guests at the residence), who then shared the

11   documents with my wife. She was in hysterics when she confronted me with the legal

12   action. To add to the stress, my wife and I had discovered only days earlier that she was

13   pregnant with our first child.

14         7.     Mr. Duncan later tried to justify his action by explaining that my wife had

15   dual citizenship and might flee the jurisdiction. Mr. Duncan's actions resulted in a

16   complete breakdown of trust between myself and the Trustee, greatly escalating the

17   acrimonious litigation between the parties. His unethical behavior continued as he

18   violated bankruptcy rules and protective orders entered into in my case.

19         8.     As hostilities increased, counsel for the Trustee threatened to file lawsuits

20   against my adult children – Jessica (age 26), Kimberly (age 24), Michael (age 21) and

21   Christopher (age 19) – for whom I had provided post-high school financial assistance

22   with respect to tuition, housing and support payments during prior years. At the same

23   time, the Trustee also threatened litigation against my law partner and law firm.

24         9.     Faced with staggering legal fees in defending the bankruptcy litigation and

25   adversary proceedings, along with the prospects of future legal action against my

26   children, my law partner and law firm, my attorney suggested moving for dismissal of the

27   bankruptcy petition. It was clear that I would never be able to obtain the fresh start that I

28   had sought, and that the personal and financial cost of litigating multi-front actions with

2

*Affidavit of Roland C. Colton*

1 | the Trustee had become extremely burdensome, threatening my marriage, my children,

2 | and my business relationships.

3 |      10.    In the midst of mounting litigation, my attorney approached the Trustee

4 | about stipulating to a dismissal of my bankruptcy petition, wherein I would receive no

5 | discharge of my debts.  The Trustee responded in writing, on May 21, 2002,  stating that

6 | if I paid a $500,000 penalty and stipulated to a denial of discharge, that the Trustee would

7 | agree to the stipulation.  I rejected the offer.

8 |      11.    Rebuffed by my rejection of the penalty payment, the Trustee raised the

9 | stakes even higher.  On June 14, 2002, making good on his threat, the Trustee filed an

10 | adversary action against my law partner and my law firm, attempting to force the law

11 | firm's dissolution and to recover from my partner one-half of all draws that had been paid

12 | to me since the filing of the petition, and seeking a termination of the partnership's lease.

13 |      12.    On July 1, 2002, I filed a motion to dismiss his bankruptcy petition.

14 | Although the Trustee previously had been willing to stipulate to a dismissal (upon

15 | payment of a substantial penalty), the Trustee now vigorously opposed the motion, and

16 | the motion was denied.  The Trustee then went into full throttle against me and other

17 | parties in the various adversary proceedings.

18 |      13.    During the pendency of the bankruptcy, with the assistance of counsel, I

19 | was preparing amendments to my bankruptcy schedules to address any potential

20 | omissions and inaccuracies contained therein.  The process of completing the

21 | amendments was frequently diverted due to the constant barrage of motions, subpoenas

22 | and other discovery matters coming from the Trustee that had to be responded to.  In

23 | addition, my time was further compromised by the birth of my daughter on October 10,

24 | 2002.  But for the onset of settlement discussions less than two weeks later, the

25 | amendments would have been completed, and would have addressed the allegations

26 | contained within the September 30, 2002 motion discussed below.

27 |      14.    On September 30, 2002, the Trustee filed an *ex parte* motion for a

28 | temporary injunction (without notice), alleging that I had concealed assets and business

3

Affidavit of Roland C. Colton

1   interests (including certain property located in France).   At the unopposed *ex parte*

2   hearing on October 15, 2002, the court granted the TRO.  On October 17, 2002, my

3   attorney and I were served with a copy of the motion and TRO, indicating a preliminary

4   injunction hearing set for October 25, 2002—just eight days later.

5        15.    On October 22, 2002, my attorney advised me that he had been told by

6   counsel for the Trustee, Susan Stevenson, that I "had better settle the case quickly if I

7   wanted to avoid future criminal action."  I perceived the comment to be borderline

8   extortion and asked Mr. Curry to note the conversation in my file.  I took very seriously

9   the implications of having to defend not only the multi-front civil litigation, but also

10  criminal proceedings in the future.

11       16.    Mr. Curry advised me that it would be in my best interests to settle the case

12  quickly in order to avoid criminal action.  As a result, settlement discussions ensued

13  rapidly.  During the course of the discussions, Mr. Curry made efforts to move the

14  discussions along as quickly as possible, at times telling me that I might be sacrificing

15  certain benefits by doing so.  For example, he believed that we could have negotiated a

16  lower financial obligation with the Trustee, given some additional time.  Foremost in my

17  mind was that we meet the Trustee's demand of reaching a prompt settlement before

18  criminal action was commenced.

19       17.    Forsaking the prior $500,000 penalty offer, the Trustee felt he had leverage

20  to ask for much more than before.  Over the course of the next few days, I ultimately

21  committed to paying the Trustee a penalty of up to $1,150,000,[1] plus agreed to pay an

22  additional $1,000,000 penalty in the event that I defaulted on the settlement agreement.

23  The Trustee also insisted that I not receive a discharge as part of the settlement.  Under no

24  circumstances would I have agreed to such excessive financial penalty and forfeited my

25  right to a discharge of debts, if I had not understood that the settlement wrapped up all

26

27  _____

28      [1] I call the $1,150,000 figure a penalty because only a small fraction of the money would be used to pay creditors. The lion's share of the money was to be paid to the Trustee, his attorneys and experts, thus resulting in a minimal pay-down of debt with no discharge of bankruptcy.

4

1   aspects of my case, including any potential criminal action.

2       18.    In negotiating and drafting the settlement agreements, Mr. Curry advised

3   me on several occasions that he was taking care to include language as strong as possible

4   to make it clear that the settlement would encompass any potential criminal action as

5   well.

6       19.    Mr. Curry also told me that, since the threat of criminal action was gone

7   with the settlement, there would be no need to file any opposition or reply papers to the

8   Motion. He further indicated to me that there would be no need to complete the

9   amendments to my bankruptcy schedules.

10      20.    I also had discussions with my wife about moving quickly on the

11  settlement. With our newborn child less than two weeks old, I reluctantly shared with my

12  wife the veiled threat of criminal action if I did not act quickly to settle the case. My wife

13  was horrified about this possibility and told me that I needed to do whatever it took to

14  resolve the bankruptcy case immediately.

15      21.    My wife told me that if we were assured that there would be no criminal

16  action taken against me that she would assist me financially with the settlement. As a

17  result, she agreed to refinance her residence and allowed approximately $280,000 of the

18  refinance funds to be used to pay the Trustee in connection with my settlement.

19      22.    Despite that the settlement involved a huge financial toll for my family, my

20  wife and I attempted to put the past behind us and get on with our lives. Convinced that

21  there would not be a criminal action, we decided to have another child. A second

22  daughter was born to us on March 8, 2005. Neither my wife nor I would have considered

23  bringing another child into the world if we had believed that I would be facing an

24  indictment with a risk of years of imprisonment. I was particularly sensitive to the

25  anxiety and panic attacks that my wife had experienced during the pendency of the

26  adversary proceeding against her in 2002. Words cannot describe the incalculable dread

27  and shock that we both experienced when we learned of the pending indictment on

28  November 8, 2005, when Special Agent John Hause approached me at my home and

1    advised me that I was a target of a federal grand jury criminal proceedings.

2        23.    I was counsel-of-record in the civil case of *Insurance Ventures, Inc. v.*

3    *Vesta Fire Ins. Co. et al.,* Sacramento Superior Court Case No. 04AS00268, which was

4    filed in January of 2004.   Insurance Ventures was seeking to recover $30,000,000 in

5    damages from the Vesta Fire Insurance Company ("Vesta").   Shortly after Insurance

6    Ventures filed its lawsuit, Vesta filed a retaliatory action against Insurance Ventures, all

7    of its officers and attorneys (including myself), in federal court in Sacramento (Case No.

8    S-04-0296 FCD PAN.)   Vesta was represented in both cases by John (Jack) Pierce of

9    Barger & Wolen.   Both cases were aggressively litigated, and my deposition was taken in

10   the federal court action in September of 2005 by Jack Pierce.

11       24.    During the course of my civil deposition, Mr. Pierce went to great lengths

12   examining me on my bankruptcy schedules, including an intensive examination about

13   ownership of property in France, my wife's purchase of her residence, the major areas of

14   focus of the criminal investigation.   At that time, I had no knowledge that there was any

15   criminal investigation, nor was I aware of any possible future indictment.   In fact, I took

16   comfort in the fact that any potential criminal exposure on the bankruptcy case was long

17   since past.

18       25.    If I had known that there was an ongoing criminal investigation, I would

19   have had the opportunity to discuss with counsel the merits of invoking the Fifth

20   Amendment against self-incrimination during the deposition.   I had no reason to believe,

21   at that late date (especially with the promise of the Trustee's counsel not to pursue

22   criminal action) that there was any possibility of a criminal investigation, and therefore

23   did not consider invoking the privilege.

24       26.    During the course of reviewing discovery from the government, I

25   subsequently learned that Mr. Pierce had been in contact with the government and was

26   aware of the criminal investigation months before I was, and prior to my civil deposition

27   in the *Insurance Ventures* case.

28       27.    During the course of reviewing discovery from the government, I also

01/08/2008  17:20      8587920532              COLTON + ROESSEP                    PAGE  01/01

1  learned that the criminal investigation commenced in the summer of 2002, while my

2  bankruptcy case was pending, something that I was not aware of before.  I further

3  observed, in looking through the discovery, that there was no action taken in the criminal

4  investigation following the "global settlement" until I had made all but the final payment

5  on my settlement.

6       28.    The shame and humiliation that has accompanied the indictment is

7  incalculable.  If a person types in my name under "Google", the indictment is front and

8  center, along with the next several references as well.  Maintaining a law practice with the

9  indictment hanging over my head has been extremely difficult.  Phone interviews with

10  potential clients, who have expressed a strong interest in retaining my services, often

11  don't call back.  If a meeting does ensue, I then feel compelled to disclose the indictment

12  and potential impact on my ability to perform legal services which, understandably, often

13  leads to a loss of the business.

14       29.    Because people are so quick to check you out these days, I am very leery

15  about giving out my full name or profession in making new acquaintances, such as

16  meeting parents of my daughters' friends at school activities or birthday parties.

17       30.    My wife comes from a very proud family.  Her father is a prominent

18  businessman in Iran who frequently visits the U.S. along with his wife.  Many of my

19  wife's relatives reside in Orange County.  My wife prefers that news of my indictment not

20  be publicized among her family.  As a result, she lives in fear that family members will

21  check us out on the internet, and that they will discover the indictment, leading to further

22  shame and embarrassment.

23       I declare under penalty of perjury that the foregoing is true and correct and that this

24  declaration was executed on the 8th day of January, 2008 at Laguna Niguel,

25  California.

26

27

28                                      Roland C. Colton